FILED
98 AUG -5 AM 9: 49
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
AUG 0 5 1998

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHRYSLER FINANCIAL CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 97-JEO-2391-S |
| JOHNNY MURPHY, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

This matter is before the undersigned magistrate judge on the petition of the plaintiff, Chrysler Financial Corporation (Chrysler), and the motion of intervenors, MS Diversified Corporation, MS Life Insurance Company, and MS Dealer Service Corporation (MS Companies), to compel the defendant, Johnny Murphy (Mr. Murphy), to submit his state civil claims against them to binding arbitration pursuant to the Federal Arbitration Act (FAA) and to stay the state court proceedings. The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). For the reasons set forth herein, the petition and motion to stay the proceedings and to compel arbitration will be granted.

### I. BACKGROUND

#### A. The Facts

On December 16, 1993, Mr. Murphy entered into a vehicle sales transaction with Jim Burke Automotive, Inc., for the purchase of a new Dodge Colt. The purchase was financed by Chrysler. Mr. Murphy purchased credit life and credit disability insurance from MS Life Insurance Company and a service contract from MS Dealer Service Corporation in connection with the sale. Burke

employees prepared and presented the paperwork used to transact the sale. Two documents signed by Mr. Murphy to effect that transaction are relevant to the present matter: (1) a retail installment contract, which was assigned to Chrysler; and (2) a buyer's order, which contained an arbitration clause. Mr. Murphy's retail installment contract provides in pertinent part:

### ASSIGNMENT

> FOR VALUE RECEIVED, the Creditor (Seller) named on the face of this contract ("Seller") [Jim Burke] hereby sells, assigns and transfers to Chrysler Credit Corporation ("Chrysler")[1] Seller's entire right, title and interest in and to this contract and authorizes Chrysler to do every act and thing necessary to collect and discharge obligations arising out of or incident to this contract and assignment....

Chrysler's Petition For Order To Compel Arbitration, Exhibit C.

### ADDITIONAL TERMS AND CONDITIONS

> H. **Assignment.** You acknowledge that this contract will be assigned to Chrysler Credit Corporation ("Assignee"). You further acknowledge that Assignee will acquire all of Creditor's interest in this contract and in the Vehicle and will be entitled to all of the rights and remedies granted to Creditor pursuant to the terms and conditions of this contract including, but not limited to, the right to receive all payments and to require the performance of all obligations required by this contract.

*Id.* The buyer's order provides in pertinent part:

### DISPUTE RESOLUTION AGREEMENT

> Buyer hereby acknowledges and agrees that all disputes and controversies of every kind and nature between buyer and Jim Burke Automotive, Inc. arising out of or in connection with the purchase of this vehicle will be resolved by arbitration in accordance with the procedures set forth on the reverse side.

### DISPUTE RESOLUTION PROCESS

All disputes and controversies of every kind and nature between the parties hereto

---

[1] Chrysler is the successor corporation to Chrysler Credit Corporation.

arising out of or in connection with this contract, its subject matter or its negotiation, as to the existence, construction, validity, interpretation or meaning, performance, non-performance, enforcement operation, breach of contract, breach of warranty, continuance of termination thereof or any claim alleging fraud in fact, fraud in the inducement, deceit, or suppression of any material fact shall be submitted to binding arbitration pursuant to the provisions of the Federal Arbitration Act and according to the commercial rules of the American Arbitration Association then in effect in Birmingham, Alabama. Such arbitration proceedings may be initiated by either party by notice in writing to the other and to the American Arbitration Association. Each party shall bear his own arbitration costs and expenses, except to the extent provided on the reverse side hereof....

The parties stipulate that the provisions hereof shall be a complete defense to any suit, action or proceeding instituted in any federal, state, or local court or before any administrative tribunal with respect to any controversy or dispute arising hereunder.

Chrysler's Petition For Order To Compel Arbitration, Exhibit B. Shortly after the sale, Burke assigned all of its rights to Chrysler.

Mr. Murphy defaulted on his payments to Chrysler under the assigned retail installment contract. The vehicle was repossessed in September 1995. Following the sale of the vehicle, a deficiency amount was established. Therefore, on January 8, 1997, Chrysler filed suit against Mr. Murphy in the District Court of Jefferson County, Alabama, to recover the deficiency owed under the agreement. Counsel for Mr. Murphy filed an answer to the complaint. On September 2, 1997, counsel agreed to a stipulation of judgment that was submitted to the court. It was never entered. The stipulation offer was withdrawn and the case was voluntarily dismissed on September 10, 1997.

Murphy filed the present state action in Circuit Court of Jefferson County on August 11, 1997, asserting various individual and class action claims against Chrysler, Jim Burke, and the MS Companies, including fraud, fraudulent suppression of information, negligent hiring and supervision, and state consumer lending violations. Chrysler alleges that after the suit was filed in Circuit Court, it discovered the arbitration clause in the buyer's order. Chrysler's petition to compel arbitration was

3

filed in this court on September 5, 1997. The MS Companies moved to intervene and compel arbitration on September 15, 1997. Motions to stay the state court proceedings were filed by Chrysler and the MS Companies on September 15 and 18, 1997, respectively, in the Circuit Court. On September 18, 1997, Burke filed an answer to Mr. Murphy's state complaint, a motion to stay the proceeding and compel arbitration of the claims. Burke's motion to stay the proceeding and to compel arbitration were granted as to Burke by Circuit Court Judge Dan King on November 21, 1997, after a hearing. Mr. Murphy filed a "Motion to Reconsider and Set Aside Order Compelling Arbitration." The motion was set for a hearing on April 22, 1998. The motion was denied on the same day, following the hearing.[2]

### B. The FAA

The FAA establishes a "federal policy favoring arbitration." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983). It provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA effectively admonishes the federal courts to "vigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Questions of arbitrability must be addressed with regard to the federal policy favoring arbitration, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a defense to arbitrability." *Moses H. Cone Memorial Hospital*, 460 U.S. at 24-25.

---

[2] In a hearing on July 30, 1998, the court determined that parallel proceeding issues were not applicable in the present matter. *See First Franklin Financial Corp. v. McCollum*, 144 F.3d 1362 (11th Cir. 1998).

4

Although the FAA does not create independent federal question jurisdiction, *Id.* at 25 n.32, it does create a body of federal substantive law which establishes and regulates the duty to honor an agreement to arbitrate. The FAA explicitly requires that the arbitration provision be written, and that it evidence a "transaction involving commerce."[3] 9 U.S.C. § 2. Further, state law that conflicts with the FAA is preempted under the Federal Constitution's supremacy clause. U. S. Const. art. VI, clause 2; *Perry v. Thomas*, 482 U.S. 483 (1987).

## II. DISCUSSION

Mr. Murphy argues that he should not be compelled to arbitrate his claims against Chrysler and the MS Companies in the state action because: (1) Chrysler and the MS Companies were not signatories to the agreement between Mr. Murphy and Burke; (2) Chrysler waived its right to compel arbitration; (3) the forms used by Burke are adhesion contracts; and (4) requiring Mr. Murphy to arbitrate his claims would violate his Seventh Amendment right to a jury trial.

### A. Nonsignatory Rights

Mr. Murphy asserts that neither Chrysler or the MS Companies were parties to the original Buyer's Order between him and Burke. Therefore, there is no agreement to arbitrate between him and Chrysler or the MS Companies. Response of Defendant, Doct. 10., pp. 5-6; Doct. 22, pp. 1-5.[4] Chrysler asserts that it is the assignee of the right to arbitrate and, even if it were not, it is entitled to compel arbitration since the claims against it as a nonsignatory are intertwined with those of Burke who was a signatory to the agreement. Chrysler Brief, pp. 6-12. MS Companies also assert

---

[3] The parties do not contest that the transaction involved commerce.

[4] References herein to "Doct. __" are to the record by numbers provided by the Clerk of the Court and located in the lower right hand of the document.

that although they are not signatories to the Buyer's Order, the arbitration clause is broad enough to include Mr. Murphy's claims against them. MS Companies Joinder Motion, Doct. 14, p. 3.

"It is the court's task, unless the parties have explicitly agreed otherwise, to determine whether an agreement to arbitrate exists between the parties. . . . In making this determination, the court should apply ordinary state common law governing the formation of contracts, with due regard for the federal policy favoring arbitration." *Roberson v. Money Tree of Alabama, Inc.,* 954 F. Supp. 1519, 1528 (M.D. Ala. 1997)(citations omitted).

It is well-settled that "[a] valid assignment gives the assignee the same rights, benefits, and remedies that the assignor possesses." *Nisson Motor Acceptance Corp. v. Ross,* 703 So. 2d 324, 325 (Ala. 1997). It is equally well-settled that when two or more documents are executed at or near the same time in the course of the same transaction concerning the same subject matter, they will be read and construed together. *Earman Oil Co., Inc. v. Burroughs Corp.,* 625 F.2d 1291, 1297 (5th Cir. 1980); *Pacific Enterprises Oil Co. v. Howell Petroleum Corp.,* 614 So. 2d 409, 414 (Ala. 1993).

Under the present circumstances, including the clear language in the retail installment contract, these authorities compel a determination that Chrysler is the assignee of Burke's rights and remedies. This court interprets those rights and remedies to include entitlement to compel arbitration pursuant to the Buyer's Order executed by Mr. Murphy at the sale of the vehicle.

The situation concerning MS Companies is a little more complex. They are neither signatories nor assignees of the agreement with Mr. Murphy. In *McBro Planning & Development Co. v. Triangle Electrical Construction Co.,* 741 F.2d 342 (11th Cir. 1984), the Eleventh Circuit Court of Appeals examined the ability of a nonsignatory under a theory of equitable estoppel to a contract to compel arbitration of a dispute with a party that was a signatory to the agreement. In

concluding that the nonsignatory could compel arbitration under the circumstances, the court examined a number of factors, including: (1) text of the arbitration clause in the contracts; (2) the relationship of the entities involved; and, (3) the nature of the claim asserted by the signatory against whom arbitration is sought by the nonsignatory. The court's conclusion was particularly founded on the close relationship between the parties, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties under the contract. *Sunkist Soft Drinks v. Sunkist Growers*, 10 F.3d 753, 757 (11th Cir. 1993), *cert. denied*, 513 U.S. 869 (1994). Quoting the Seventh Circuit Court of Appeals, the *McBro* court stated, "in this situation, the contractor's claims are 'intimately founded in and intertwined with the underlying contract obligations.'" *McBro*, 741 F.2d at 344, *quoting Hughes Masonry Co. v. Greater Clark County School Bldg. Corp.*, 659 F.2d 836 (7th Cir. 1981). Accordingly, the focus for this court should be on the nature of the underlying claims of Mr. Murphy against the MS Companies to determine whether they fall within the scope of the arbitration clause. *Sunkist*, 10 F.3d at 757-58.

Applied in this case, the *McBro* factors support the MS Companies argument that they may compel Mr. Murphy to arbitrate. In his state action, Mr. Murphy alleges that the MS Companies acted in concert with Burke and Chrysler in perpetrating a fraud and deceit by selling unnecessary credit life insurance, in suppressing the true amount of insurance needed regarding the sale of a vehicle to Mr. Murphy and the sale of other vehicles to others, and in violating the state consumer lending laws. Mr. Murphy also alleges that the MS Companies and the other defendants negligently and wantonly hired and supervised their agents that were involved in the sale of the insurance. These claims clearly arise from the sale of the vehicle and the contractual obligations entered into by Mr. Murphy. They also concern contractual obligations implicating all the state defendants. The

credit life insurance provided by MS Companies was purchased as a part of the sale of the vehicle. The MS Companies' alleged liability is premised on the actions of Burke's employees who, according to Mr. Murphy, were acting as agents of the MS Companies. Accordingly, the claims are "intimately founded in and intertwined with the underlying contract obligations," warranting submission to an arbitrator. *See Roberson,* 954 F. Supp. at 1529. The claims of Mr. Murphy against the signatories and the nonsignatories are inextricably bound up with the terms and duties of the contract Mr. Murphy signed with Burke and that was assigned to Chrysler. The underlying state court claims asserted by Mr. Murphy thus clearly fall within the scope of the arbitration clause.[5]

## B. Waiver

Mr. Murphy next asserts that Chrysler waived its right to compel arbitration because of its substantial participation in the collection suit filed in District Court. Response of Defendant, Doct. 10, pp. 3-5. Chrysler asserts that it has not waived its right because: (1) Chrysler's attorneys had no knowledge of any right of arbitration at the time of the filing of the collection action; (2) there was not a substantial invocation of the litigation process inconsistent with an intent to arbitrate; and, (3) Mr. Murphy has not suffered prejudice as a consequence of the litigation. Chrysler Brief, p. 15.[6]

---

[5] The dispute resolution agreement provision in the Buyer's Order provides that the "[b]uyer hereby acknowledges and agrees that all disputes and controversies of every kind and nature between buyer (Mr. Murphy) and Jim Burke Automotive, Inc., arising out of or in connection with the purchase of this vehicle will be resolved by arbitration. . . ." Chrysler's Petition, Exhibit B. The Dispute Resolution Process provision on the reverse side of the Buyer's Order states that "all disputes and controversies of every kind and nature between the parties hereto arising out of or in connection with this contract, its subject matter or its negotiation...or any claim alleging fraud in fact, fraud in the inducement, deceit, or suppression of any material fact shall be submitted to binding arbitration pursuant to the provisions of the Federal Arbitration Act. . . ." *Id.* Under the express terms of the agreement, the strong federal policy favoring arbitration and equitable considerations, the court concludes that the provisions are broad enough to support the MS Companies motion to compel arbitration.

[6] The waiver issue applies only to Chrysler since the MS Companies did not participate in the collection suit.

Despite the preference for arbitration over litigation, a party can waive a right to arbitrate under the FAA. *Miller v. Drexel Burnham Lambert, Inc.*, 791 F.2d 850, 853 (11th Cir. 1986). Any doubts regarding a waiver must be resolved in favor of arbitration, and the party opposing arbitration must meet a "heavy burden" to prove waiver. *Driscoll*, 815 F.2d at 659. There is no set rule as to what constitutes a waiver and the issue depends upon the particular facts. *Burton-Dixie Corp. v. Timothy McCarthy Const. Co.*, 436 F.2d 405 (5th Cir. 1971). "A party seeking to prove a waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Hoffman Cons. v. Active Erectors & Installers, Inc.*, 969 F.2d 796, 798 (9th Cir. 1992), *cert. denied*, 507 U.S. 911 (1993). "Waiver occurs when a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate and this results in prejudice to the opposing party. . . . Prejudice has been found in situations where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate." *Morewitz v. West of England Ship Owners Mut. Protection & Indem. Assn.*, 62 F.3d 1356, 1366 (11th Cir. 1995), *cert denied*, 516 U.S. 1114 (1996).[7]

On the issue of knowledge, Mr. Murphy asserts that Chrysler had either actual or constructive knowledge of the arbitration provision. Chrysler asserts that its attorneys did not know about the provision. More particularly, Chrysler asserts that its attorneys became aware of the clause when Mr. Murphy filed his suit in Circuit Court. At the status conference held in this case on April 23,

---

[7] Mr. Murphy cites *Worldsource Coil Coatings, Inc. v. McGraw Construction Company, Inc.*, 946 F.2d 473 (6th Cir. 1991), where the court held that the right to compel arbitration had been waived when the party seeking to compel arbitration instituted a state court action. The *Worldsource* court did not require a showing of prejudice. The Eleventh Circuit, however, clearly requires a showing of prejudice. *See Morewitz*, 62 F.3d at 1366.

9

1998, counsel for Mr. Murphy asserted that it would be appropriate and necessary to conduct discovery to determine what knowledge counsel for Chrysler had of the arbitration provisions in this particular transaction and in the usual course of dealing. Because a finding of waiver requires evidence of sufficient prejudice to the party opposing arbitration, the court suggested and the parties agreed to address the waiver issue from the standpoint of what litigation costs were incurred and the resulting prejudice to Mr. Murphy. Absent a sufficient showing on the prejudice prong, discovery on the issue of Chrysler's knowledge is unnecessary.

Mr. Murphy asserts that Chrysler substantially participated in the collection action to a point inconsistent with an intent to arbitrate and he alleges that this resulted in prejudice to him. His submission on the issue, including his affidavit and that of his counsel in the collection proceeding, E. L. Brobston, shows that a relatively small amount of time was spent on the collection matter. Most of the time concerned the filing of a one-page answer, dealing with minimal discovery issues surrounding the amount of the deficiency owed and consultation with other counsel regarding possible counterclaims, which ultimately resulted in the filing of the case in Circuit Court.[8] Affidavit of E. L. Brobston.

Prejudice has been found where a party previously litigated the same claims it now seeks to arbitrate (*Doctor's Associates, Inc. v. Distajo,* 107 F.3d 126, 133 (2nd Cir.), *cert. denied,* ___ U.S.___, 118 S. Ct. 365 (1997)), where the party had ample opportunity to demand arbitration well in advance of a decision that significantly changed the legal position to the other party's detriment (*Morewitz,* 62 F.3d at 1366), and where the party invokes the judicial process to a significant degree

---

[8] Counsel for Mr. Murphy candidly admits that he has no time records showing the total time expended. Additionally, there was no showing of substantial expenses incurred in the collection proceeding by Mr. Murphy.

(*Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir. 1991)).[9]

Applying the foregoing considerations to the facts in this case, the court finds that Mr. Murphy suffered no prejudice as a consequence of the limited legal action taken by Chrysler in the collection action. For instance: the issue presented in the collection action was merely the amount of the deficiency; Mr. Murphy did not provide discovery in the collection action that otherwise would be unavailable during arbitration; his position in the Circuit Court action was not inimically effected; and the activity in the collection action was not significant or substantial for purposes of the FAA.

### C. Adhesion Contract

Mr. Murphy further asserts that the forms used in the transaction can easily be characterized as adhesion contracts. Specifically, he asserts that he was in an inferior bargaining position and he had been brought to the dealership in a cab paid for by the salesman and had no transportation home if he did not go through with the transaction. Defendant's Response, p. 6. Chrysler counters that Mr. Murphy is collaterally estopped from raising this issue and that the agreement is not an adhesion contract.

"Collateral estoppel prevents the relitigation of a previously decided issue when the parties are the same (or in privity) if the party against whom the issue was decided had a full and fair opportunity to litigate the issue in the earlier proceeding." *In re Southeast Banking Corp.*, 69 F.3d 1539, 1552 (11th Cir. 1995), *citing Allen v. McCurry*, 449 U.S. 90, 95 (1980). Collateral estoppel

---

[9] In *Walker*, the party seeking arbitration did so only after removing the state case to federal court, serving the plaintiffs with various discovery requests, participating in a pretrial conference, and causing the court to enter four scheduling orders. The defendant waited thirteen months to compel arbitration. *Walker*, 938 F.2d at 576. The court held that this did not constitute a waiver.

11

only applies if the following elements are established: (1) the issue in the prior action must be identical to the one to be decided in the pending matter; (2) the issue must have been litigated in the prior action; (3) the prior determination must have been a critical and necessary part of the judgment in that earlier decision; and, (4) the standard of proof in the prior action must have been at least as stringent as the standard in the pending matter. *In re Bilzerian,* 100 F.3d 886, 892 (11th Cir. 1996), *cert. denied,* \_\_\_ U.S.\_\_\_, 118 S. Ct. 1559 (1998); *In re Southeast Banking Corp.*, 69 F.3d at 1552.

The record reveals that this issue was presented in the Circuit Court of Jefferson County by Mr. Murphy in opposition to Burke's Motion to Compel Arbitration. It was specifically presented in his "Motion to Reconsider and Set Aside Order Compelling Arbitration." Supplemental Brief of Chrysler, Ex. 1, p. 2. A hearing was held on the motion to reconsider on April 22, 1998, wherein Mr. Murphy reasserted this defense to arbitration. The motion to reconsider was denied on that same day. Supplemental Brief of Chrysler, Ex. 2. The determination of this issue was a critical and necessary part of the earlier litigation and the standard of proof was at least as stringent as in the present matter. Accordingly, Mr. Murphy is collaterally estopped from relitigating this issue. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979)(Collateral estoppel precludes a party from relitigating identical issues).

Assuming *arguendo,* that collateral estoppel does not apply, Mr. Murphy is entitled to no relief on this claim. When considering whether the arbitration clause in a contract is valid, the court may inquire only into those issues relating to the making and performance of the clause and not to claims regarding the enforceability of the contract in general. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967). There must be evidence that the arbitration clause itself, standing apart from the whole agreement, was not enforceable. *See Coleman v. Prudential Bache Securities,*

*Inc.*, 802 F.2d 1350, 1352 (11th Cir. 1986). Allegations of fraud, duress or unconscionability in the contract as a whole are matters to be resolved in arbitration. *Coleman,* 802 F.2d at 1352; *Miller*, 791 F.2d at 854.

Where the party opposing arbitration presents "well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract,'" the court may refuse to recognize the arbitration agreement. *Rodriguez de Quijas v. Shearson/American Express*, 490 U.S. 477, 483-84 (1989), *citing* 9 U.S.C. § 2 and *Mitsubishi Motors v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985). If the party claims the agreement to arbitrate was one of adhesion, the record must contain a sufficient factual showing to support that suggestion. *Rodriguez de Quijas*, 490 U.S. at 484. There is nothing inherently unfair or oppressive about arbitration clauses. *Coleman,* 802 F.2d at 1352. Further, absent a showing of fraud or mental incompetence, a person who signs a contract cannot avoid his obligations thereunder by showing he did not read what he signed. *Coleman,* 802 F.2d at 1352.

Mr. Murphy's claim of adhesion, which is premised on his alleged inferior bargaining position and that he was brought to the dealership by in a cab and did not have a way home, is not a sufficient showing of unfairness, unconscionability, or coercion to warrant a conclusion that the agreement is an adhesion contract.

### D. Seventh Amendment

Lastly, Mr. Murphy asserts that requiring him to arbitrate his claims "would deny him his right to a jury trial guaranteed by the Seventh Amendment to the United States Constitution." Response of Defendant, Doct. 22, p. 5. More specifically, Mr. Murphy asserts that he was coerced into forfeiting his right to a jury trial by Congress' enactment of the FAA and the United States

13

Supreme Court's broad interpretation of the Act.

In *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148,1155 n.12 (5th Cir. 1992), *cert. denied sub nom.*, 506 U.S. 1079 (1993), the court held that the "Seventh Amendment does not preclude 'waiver' of the right to jury trial through the signing of a valid arbitration agreement." This is consistent with Congress' intent in enacting the FAA to "declare a national policy favoring arbitration and withdraw[ing] the power of the states to require a judicial forum for the resolution of claims which the contracting parties agree to resolve by arbitration." *Southland Corp. v. Keating* 465 U.S. 1, 10 (1984). It is also consistent with the Supreme Court's approval of various procedural devices, such as summary judgment, the directed verdict and setting aside a verdict, which "have been found not to be inconsistent with the Seventh Amendment." *Parklane Hosiery Co.*, 439 U.S. at 336. The statutory framework of the FAA and the Supreme Court's interpretation of it cannot be contorted into a conclusion that they result in unlawful deprivation of Mr. Murphy's constitutionally protected right to a jury trial. Premised on this court's finding that the arbitration agreement in this case is valid as executed by Mr. Murphy, this claim is without merit.

### III. CONCLUSION

For these reasons stated above, the magistrate judge concludes that Chrysler's petition for an order compelling Mr. Murphy to arbitrate and for a stay of the state court proceedings and the MS Companies' joinder in Chrysler's petition to compel and for a stay of the state proceedings are due to be **GRANTED.** Accordingly, Mr. Murphy will be compelled to arbitrate his claims against Chrysler and the MS Companies that are pending in the state court action, *Johnny C. Murphy v. Jim Burke Automotive, Inc., et al.*, Jefferson County Circuit Court, Bessemer Division No. CV 97-645 and said matter will be stayed as to Chrysler and the MS Companies.

DONE this the 4th day of August, 1998.

*John E. Ott*
JOHN E. OTT
UNITED STATES MAGISTRATE JUDGE